Filed 1/15/26  P. v. Brown CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B338469 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A800733) |
| v. | |
| PAUL DAVID BROWN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael V. Jesic, Judge.  Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General for Plaintiff and Respondent.

———————————

Paul David Brown was convicted of two counts of first degree murder in 1984.  Years later, Brown sought vacatur of the murder convictions and resentencing pursuant to Penal Code[1] section 1172.6.  He appeals the trial court's order denying his petition, in which the court found that, in light of the instructions given, the jury's verdicts finding true special circumstances as to both murder counts precluded relief as a matter of law.

We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

### A.    *Trial, Sentencing, and Appeal*

In 1982, Brown and codefendant Scott Pinholster broke into the home of a friend of Pinholster's and ransacked it, searching for money and drugs.[2]  As Brown and Pinholster were leaving the house, victims Thomas Johnson and Robert Beckett arrived.  Brown stabbed Johnson to death while Pinholster stabbed Beckett to death.  Afterwards, Brown and Pinholster shared the $23 and quarter ounce of marijuana they had stolen.

At trial in 1984, Brown was prosecuted for the murders under multiple theories of liability, including direct liability as a perpetrator or aider and abettor of murder with or without premeditation, felony murder, and the natural and probable

---

[1] All further statutory references are to the Penal Code.

[2] The facts are taken from the prior appellate opinion and are included for context only.  (*People v. Brown* (Feb. 25, 1986, B006213) [nonpub. opn.].)

2

consequences doctrine. With respect to the murder counts, the prosecution alleged multiple murder and felony murder (robbery and burglary) special circumstances. Brown was also charged with two counts of robbery and one count of burglary with associated enhancement allegations.

As pertinent here, the jury was instructed on principals (CALJIC No. 3.00), aiding and abetting (including aiding and abetting under the natural and probable consequences doctrine) (CALJIC No. 3.01), homicide (CALJIC No. 8.00), murder (CALJIC No. 8.10), malice aforethought (CALJIC No. 8.11), deliberate and premeditated murder (CALJIC No. 8.20), first degree felony murder (CALJIC No. 8.21 [robbery and burglary]), specific intent to commit the underlying crime in felony murder (CALJIC No. 8.79), aider and abettor of first degree felony murder (CALJIC No. 8.27), second degree murder (CALJIC No. 8.30), special circumstances (introductory) (CALJIC No. 8.80), multiple murder special circumstances (CALJIC No. 8.81.3), felony murder special circumstances (burglary and robbery) (CALJIC No. 8.81.17), burglary (CALJIC No. 14.50, CALJIC No. 14.51), and robbery (CALJIC No. 9.10).

The jury found Brown guilty of two counts of first degree murder (§ 187, subd. (a), counts 1 & 2), one count of burglary (§ 459, count 3), and two counts of robbery (§ 211, counts 4 & 5). With respect to both murders, the jury found true multiple murder special circumstances (§ 190.2, subd. (a)(3)), and felony murder special circumstances for robbery and burglary (§ 190.2, subd. (a)(17)). The jury found true that during the commission of the murders, Brown personally used a deadly and dangerous weapon, a knife (§ 12022, subd. (b); counts 1 & 2), that during the commission of the burglary and robbery of victim Thomas

Johnson, Brown personally inflicted great bodily injury upon Johnson (§ 12022.7, counts 3 & 4), and that during the commission of the burglary and both robberies Brown personally used a deadly and dangerous weapon, a knife (§ 12022, subd. (b); counts 3, 4 & 5).

The trial court sentenced Brown to two consecutive terms of life without the possibility of parole, plus a determinate term of 12 years in prison.

The Court of Appeal modified the judgment to stay the determinate term imposed until the two consecutive terms of life without the possibility of parole had been served, but otherwise affirmed the judgment.

## B. *Section 1172.6 Petition for Resentencing*[3]

In or around 2023, Brown filed a petition for resentencing pursuant to section 1172.6.[4]

The People opposed Brown's petition, arguing that the instructions the court gave with respect to the special circumstance allegations required the jury to find that Brown was either the actual killer or that he was an aider and abettor who acted with intent to kill before it could find the special circumstances true. Those findings precluded prima facie eligibility.

---

[3] We limit our recitation to arguments that are relevant to the appeal.

[4] The petition is not contained in the record on appeal, but the parties do not dispute that it was filed.

4

Brown's appointed counsel filed a reply arguing that the jury may have convicted Brown because it imputed codefendant Pinholster's actions to him.

The People filed a supplemental opposition arguing that the prosecution's natural and probable consequences and felony murder theories relied on the same crimes, and were therefore identical. Regardless of the underlying theory of murder, the jury necessarily found beyond a reasonable doubt that Brown was the actual killer, or an accomplice to first degree murder, or that he was engaged in the commission or attempted commission of the underlying felonies in which death occurred. In combination, the jury's finding that Brown had the intent to kill, and its finding that Brown was engaged in the commission or attempted commission of the underlying felonies in which death occurred, met the current requirements for conviction of felony murder under section 189, subdivision (e)(2). The People distinguished the Supreme Court's recent decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), which held that, in the context of the natural and probable consequences doctrine, the jury's finding of intent to kill was insufficient to preclude prima facie eligibility under section 1172.6 if the record did not conclusively establish knowledge or the relevant actus reus. The record established all elements of felony murder under section 189, subdivision (e)(1) and (e)(2).

Brown filed a supplemental reply. He argued that neither the verdict forms nor the special circumstance findings reflected that the jury found Brown (1) acted with intent to kill or (2) aided, abetted, or assisted the actual killer. Brown asserted that the jury may have based its murder verdicts solely on the instructions in CALJIC No. 8.10, which permitted it to find him

5

guilty of murder based on the old felony murder law. Brown stated that under *Curiel*, a finding of intent to kill, standing alone, did not preclude section 1172.6 eligibility.

## C.  *The Hearing*

At the hearing to determine whether Brown was prima facie eligible for resentencing, defense counsel argued that under the instructions given the jury did not specifically find that Brown was the actual killer or that he had the intent to kill and the intent to aid and abet the killing during the commission of burglary.

The prosecutor stated that the 1984 jury instructions pre-dated the law that a felony murder special circumstance could be based on being a major participant in the felony who acted with reckless indifference to human life. At that time, the felony murder special circumstances could only have been found true if Brown was the actual killer or acted with intent to kill.[5] The jury was instructed under CALJIC No. 8.81.17, which required it to find that Brown intended to kill or to aid in the killing to find the felony murder special circumstance true. In these narrow circumstances, where the conviction was very old, the instructions were such that the jury's findings would support conviction under the current law, rendering Brown prima facie ineligible for relief. The instructions connected the actus reas of

---

[5] At that time, intent to kill was an element of the felony murder special circumstance for both actual killers and persons who were not the actual killer but acted with intent to kill. (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 153.)

6

aiding and abetting the underlying felonies with the intent to kill.

The trial court agreed with the prosecutor's argument and denied the petition because Brown failed to demonstrate prima facie eligibility.

## DISCUSSION

### A.    *Legal Principles*

When Brown was tried under the natural and probable consequences doctrine, a defendant could be convicted of murder under the theory that the defendant aided and abetted a crime of which murder was a natural and probable consequence.  (See *People v. Chiu* (2014) 59 Cal.4th 155, 161 [discussing natural and probable consequences liability generally]; see also § 31.)  Under this doctrine, it was not necessary for the prosecution to prove that the defendant intended that the murder be committed or even that the defendant subjectively foresaw that murder could result from commission of the crime.  (See *People v. Chiu*, at pp. 161–162.)

When Brown was tried, under the felony murder theory of liability, " ' " 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' [Citation.]  Murders occurring during certain violent or serious felonies[, including robbery and burglary,] were of the first degree . . . . [Citations.]" [Citation.]' (*People v. Wilson*

7

(2023) 14 Cal.5th 839, 868.)" (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1199.)

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats 2018, ch. 1015) "to amend the felony murder rule and the natural and probable consequences doctrine . . . ." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Strong* (2022)13 Cal.5th 698, 707–708.) The bill amended section 188, which defines malice, to abrogate the natural and probable consequences doctrine as it relates to murder. (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

"Senate Bill No. 1437 [also] limited the class of persons liable for felony murder by adding section 189, subdivision (e). Under current law, '[a] participant in the perpetration or attempted perpetration of [certain enumerated felonies, including robbery] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2.' (§ 189, subd. (e)(1)–(3).)" (*People v. Garcia* (2022) 82 Cal.App.5th 956, 965.)

Senate Bill No. 1437 added to the Penal Code former section 1170.95, now section 1172.6, which created a procedure for persons convicted under the prior laws to seek vacatur of the

conviction and resentencing. (*Strong, supra*, 13 Cal.5th at p. 708; *People v. Gentile, supra*, 10 Cal.5th at p. 843.) " 'Under section 1172.6, the process begins with the filing of a petition declaring that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189" made by Senate Bill 1437. [Citation.] The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to relief. [Citation.] "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]" [Citation.]' (*People v. Wilson, supra*, 14 Cal.5th at p. 869, fn. omitted.)" (*People v. Bodely, supra*, 95 Cal.App.5th at p. 1200.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. . . ." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "In making its evaluation, the court may review the record of conviction—including the charging documents, jury instructions, verdicts, and to a limited extent any prior appellate opinion—to determine if the petitioner's allegations are conclusively rebutted by the record." *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 864–865.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*People v. Lewis, supra*, at p. 972.) If the petitioner makes a prima facie showing of eligibility, the trial court must issue an order to show cause and hold an evidentiary hearing. (*Ibid*.)

"If the record demonstrates the jury necessarily found the

petitioner guilty of murder under a still-valid theory, the petitioner does not satisfy the condition that he or she 'could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made' by Senate Bill 1437 (§ 1172.6, subd. (a)(3)); under this circumstance, the petition fails at the prima facie stage, and the petitioner is ineligible for relief under section 1172.6 as a matter of law.  (See *Curiel*, *supra*, 15 Cal.5th at pp. 464–465 [if the verdicts and jury instructions reflect that the jury made 'all of the factual findings necessary to support a murder conviction under current law,' ineligibility for relief is conclusively established]; *People v. Harden* (2022) 81 Cal.App.5th 45, 59–60 [where the jury instructions and verdicts demonstrated the jury necessarily found the petitioner was the actual killer and therefore was not eligible for relief, the trial court correctly denied the petition at the prima facie stage].)"  (*People v. Krueger* (2025) 115 Cal.App.5th 431, 438)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing.  (*People v. Harden, supra*, 81 Cal.App.5th at p. 52.)  We may affirm a trial court's judgment on any correct basis presented by the record, whether or not relied upon by the trial court.  (*People v. Orozco* (2018) 24 Cal.App.5th 667, 672–673.)

### B.  *Analysis*

Brown contends that the trial court erred because the record of conviction does not conclusively establish that he is ineligible for relief as a matter of law.  We disagree.  Given the general introductory instructions on the special circumstances (CALJIC No. 8.80) and the specific instructions on the felony

10

murder special circumstances (CALJIC No. 8.81.17), the jury's true findings on the special circumstance allegations demonstrate that the jury necessarily found all elements required to prove Brown guilty of felony murder under section 189, subdivisions (e)(1) and (e)(2), as amended by Senate Bill No. 1437. Because the jury made the findings necessary to find Brown guilty under a still valid theory of murder, he has not met his burden of demonstrating prima facie eligibility for relief pursuant to section 1172.6.

**1. <u>In Light of the Introductory Instructions on Special Circumstances and the Felony Murder Special Circumstance Instructions, the Jury Necessarily Found that Brown was Guilty of Felony Murder as Defined Under the Current Laws</u>**

### a. *Jury Instructions and Verdicts*

As relevant here, the trial court instructed the jury generally regarding all special circumstances alleged in counts 1 and 2 that, under CALJIC No. 8.80:

"If you find the defendant in this case guilty of murder of the first degree, you must then determine if murder was committed under (one or more of) the following special circumstance(s): Multiple murder, Robbery, or Burglary.

"[¶] . . . [¶]

"If defendant Brown was not the actual killer, it must be proved beyond a reasonable doubt that *he intentionally aided, abetted, counseled, commanded, induced, solicited, requested, or*

*assisted the actual killer in the murder in the first degree* before you are permitted to find the alleged special circumstance of that first degree murder to be true as to defendant Brown." (Parentheses omitted, italics added.)

Regarding the felony murder robbery special circumstances, the court instructed the jury under CALJIC No. 8.81.17 as follows:

"As to each Count I and Count II, considered separately: to find that the special circumstances referred to in these instructions as murder in the commission of robbery is true, it must be proved:

"la. That the murder was committed while the defendant was engaged in the commission of a robbery, or

"lb. That the murder was committed during the immediate flight after the commission of a robbery by the defendant, and,

"2. That the defendant *intended to kill or to aid in the killing*, and

"3. That the murder was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstances referred to in these instructions are not established if robbery was merely incidental to the commission of the murder." (Italics added.)

The jury was separately instructed on the felony murder burglary special circumstances under CALJIC No. 8.81.17.

The jury found true all of the special circumstances alleged in counts 1 and 2—multiple murder, felony murder in the commission of a robbery, and felony murder in the commission of a burglary.

12

### b. *Legal Principles*

Murder liability under current law requires that the defendant act with a certain intent (mens rea) and commit a culpable act (actus reus). (*Curiel*, *supra*, 15 Cal.5th at p. 441.) As relevant here, to be convicted under a theory of felony murder, section 189, subdivision (e) provides:

"A participant in the perpetration or attempted perpetration of a [qualifying felony, including robbery and burglary] in which a death occurs is liable for murder only if one of the following is proven:

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree."[6]

To determine whether an instruction accurately conveys an element of a charge, we consider how a reasonable juror would understand the language of the instruction. (*People v. Warren* (1988) 45 Cal.3d 471, 487.) "In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety." (*Ibid.*)

---

[6] Liability for felony murder pursuant to section 189, subdivision (e)(3) as a major participant in the underlying felony who acted with reckless disregard for human life is not implicated in this appeal. At the time of Brown's trial, a defendant could not be convicted of a felony murder special circumstance on that basis.

### c. Section 189, subdivision (e)(1), Actual Killer[7]

If the defendant is an actual killer who kills in the commission of an enumerated felony, malice is imputed; the only mens rea required is the specific intent to commit the underlying felony. (*People v. Vang* (2022) 82 Cal.App.5th 64, 81.) It is uncontested here that the jury's verdicts necessarily reflect that Brown intended to commit both the robbery and the burglary. By convicting Brown of the murders, the jury necessarily found that he was either the actual killer or that he aided the actual killer in some act but was not the actual killer. If the jury found that Brown was the actual killer, the requirements for liability under section 189, subdivision (e)(1) were met by the finding that he committed the underlying felonies and that the murder occurred in the commission of those felonies.

### d. Section 189, subdivision (e)(2), Not the Actual Killer

Brown contends that the requirements of section 189, subdivision (e)(2) were not met because the jury did not specifically find that (1) he acted with intent to kill, (2) the act he "aided, abetted, counseled, commanded, induced, solicited,

---

[7] Brown argues that the instructions did not require the jury to find that he was the actual killer. It does not matter whether the jury convicted Brown as an actual killer or as a person who aided the killer with intent to kill. What matters is that, in light of the verdicts and instructions, the jury must have convicted Brown of felony murder as it is currently defined under section 189, subdivision (e)(1) or (e)(2). The precise role the jury believed Brown played is irrelevant.

14

requested, or assisted"[8] was the killing, rather than the underlying robberies or burglary; or (3) that he acted with knowledge of Pinholster's intent. These arguments also lack merit.

i.      Intent to Kill

At trial, the court instructed the jury under CALJIC No. 8.80 as to all special circumstances that: "If defendant Brown was not the actual killer, it must be proved beyond a reasonable doubt that *he intentionally aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the murder in the first degree . . . .*" (Italics added.) Brown contends that the instruction did not expressly inform the jury that, if he was not the killer, he had to have acted with intent to kill.

In *People v. Warren*, *supra*, 45 Cal.3d at page 487, the Supreme Court addressed whether a special circumstance instruction (described below) properly conveyed to the jury that an aider and abettor to felony murder must have the intent to kill before the jury could find true that special circumstance. The special circumstance at issue contained the language: " 'the defendant was . . . a person who *intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of murder in the first degree.*'" (Italics added.) The court held that the quoted language did

---

[8] For economy, we will refer to "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted" as "aided" in the remainder of this opinion, except when quoting a statute or instruction.

15

convey to the jury that it must find an intent to kill. (*Ibid*.) The court recognized that in light of the instructions defining murder in the first degree as including killings that were intentional, unintentional, or accidental, a juror could conceivably understand the "intentionally aided" language to mean that the defendant intended to commit the robbery in that case, but the court concluded that "one could understand the charge as requiring intent to rob and nothing more only if he parsed it in a hypertechnical manner." (*Id*. at p. 488.) A reasonable juror would "not undertake such tortuous analysis." (*Ibid*.)

We conclude that CALJIC No. 8.80, which, as given in Brown's case, employs the same language, and therefore accurately conveyed to the jury that if Brown was not the actual killer the jury could not find the special circumstances true unless it found he had acted with the intent to kill. The jury's true findings on the special circumstances confirm that it found Brown acted with intent to kill.

Additionally, the trial court instructed Brown's jury under CALJIC No. 8.81.17 that the jury must find "the defendant intended to kill *or* to aid in the killing" before it could find true a felony murder special circumstance as to either of the murder counts. (Italics added.) Brown asserts that "the use of the disjunctive 'or' suggests that intent to kill was not required if the defendant intended to 'aid in the killing.'"

We agree that the use of the disjunctive "or" in CALJIC No. 8.81.17 signaled to the jury that there were two bases on which it could find the special circumstance true, and that those bases were not identical. However, absent some logical rationale, the word "or" did *not* suggest that the jury could find the felony murder special circumstances true even if it found Brown did not

16

intend to kill. The difference between the phrase "intended to kill" and "intended . . . to aid in the killing" in CALJIC No. 8.81.17 can be explained by our Supreme Court's interpretation of the language of section 190.2, the special circumstance statute. In 1983, in *Carlos v. Superior Court, supra*, 35 Cal.3d at pp. 153–154, the Supreme Court held that intent to kill was an element of a felony murder special circumstance under section 190.2, subdivision (a)(17), regardless of whether the defendant was the actual killer or was not the actual killer but aided the first degree murder. This was the law at the time of Brown's trial. The instructions that the trial court gave the jury at Brown's trial accurately set forth the law as it was construed in *Carlos*: To find the felony murder special circumstances true, the jury must first find beyond a reasonable doubt that Brown had the intent to kill, irrespective of whether the jury found Brown was the actual killer or aided the actual killer. The difference between the language of the two bases in CALJIC No. 8.81.17 reflected the fact that liability could attach to a defendant if he acted in either role, so long as intent to kill was proven. Because the jury found the felony murder special circumstances true as to both murder counts, it necessarily found that Brown intended to kill with respect to both murders, whether as the perpetrator or as an aider of the perpetrator.

ii.    Actus Reas

Brown contends that section 189, subdivision (e)(2) requires the jury to find that a person who is not the actual killer undertook some act that aided the actual killer in the killing, and not just an act that aided in the underlying felony. The actus

17

reas for murder under section 189, subdivision (e)(2) is currently a matter of vigorous debate among the Courts of Appeal. (See *People v. Lopez* (2023) 88 Cal.App.5th 566 (*Lopez I*) [defendant must aid the underlying felony]; *People v. Morris* (2024) 100 Cal.App.5th 1016, review granted Jul. 17, 2024, S284751 (*Morris*) [underlying felony]; *People v. Lopez* (2024) 104 Cal.App.5th 616, review granted Nov. 13, 2024, S278162 (*Lopez II*) [underlying felony]); *People v. Kelly* (2024) 105 Cal.App.5th 162, review granted Nov. 26, 2024, S287341 (*Kelly*) [defendant must aid the killing]; *People v. Jackson* (2025) 110 Cal.App.5th 128, review granted June 11, 2025, S290457 (*Jackson*) [killing]; *People v. Taito* (2025) 115 Cal.App.5th 694, 704 (*Taito*) [underlying felony].) The Supreme Court has granted review and will ultimately decide the issue.

We need not weigh in on this debate to resolve Brown's appeal, however, because we conclude that whatever the meaning of the current law, the jury made the findings to satisfy the elements of murder under either interpretation. Brown argues that the amendments to section 189, subdivision (e)(2) require the jury to find he aided the actual killer in the killing, and leaves it at that. But Brown's interpretation of the statute only allows him to prevail if the instructions given *did not* require the jury to find that he aided the actual killer in the killing.

When interpreting an instruction, we consider what the language would mean to a reasonable juror. (*People v. Warren, supra*, 45 Cal.3d at p. 487.) The language of CALJIC No. 8.80 describing the culpable act is identical in substance to the actus reas language in section 189, subdivision (e)(2). Brown's jury was instructed under CALJIC No. 8.80 that to find the special circumstances true it must find Brown "aided, abetted, counseled,

18

commanded, induced, solicited, requested, or assisted the actual killer in the murder in the first degree[.]" Section 189, subdivision (e)(2) provides that liability attaches if the defendant who is not the actual killer "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (Emphasis added.) Only the words of section 189, subdivision (e)(2) that we have underscored—"commission of"—differ from the instruction given to Brown's jury with respect to the actus reas. Brown argues that the plain meaning of section 189, subdivision (e)(2) is that a defendant who is not the killer must, with intent to kill, aid in the killing. He does not suggest that we should assign the language of the instruction any different meaning. We see no reason to distinguish between the two phrases and conclude that a reasonable juror would understand them to have the same meaning.

The question that remains, however, is whether these instructions would be understood by a reasonable juror to require proof that a defendant aiding in the killing itself, or require only proof that the defendant aided in an underlying felony during which a killing occurred.

There do not appear to be any published opinions in which courts have found that the common meaning of "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" is to aid in an underlying felony rather than to aid in the killing itself. The courts and dissenting justices that have concluded the phrase refers to aiding the killing are in agreement that this understanding reflects the plain meaning of the words. (*Jackson, supra*, 110 Cal.App.5th at pp. 166–168; *Kelly, supra*, 105

19

Cal.App.5th at p. 172; *Morris*, *supra*, 100 Cal.App.5th at pp. 1031–1032 (dis. opn. of Moore, J.); *Lopez I*, *supra*, 88 Cal.App.5th at p. 587 (dis opn. of Raphael, J.).)

The cases holding that the relevant actus reus is commission of the underlying felony do not focus on plain meaning. They rely instead on legislative intent as influenced by the Supreme Court's interpretation of "murder in the first degree" as commission of the underlying felony, which they characterize as a "term of art."[9] (*Taito*, *supra*, 115 Cal.App.5th at p. 704; *Lopez II*, *supra*, 104 Cal.App.5th at pp. 621–622;

---

[9] Rather than interpreting "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," these cases focus their analysis on the phrases "murder in the first degree" or "commission of murder in the first degree" and assign no meaning to the words "actual killer." (*Taito*, *supra*, 115 Cal.App.5th at pp. 703–704 [interpreting "commission of murder in the first degree"]; *Lopez II*, *supra*, 104 Cal.App.5th at pp. 621–622 [words "actual killer" do not impact the analysis; interpreting "murder in the first degree"]; *Morris*, *supra*, 100 Cal.App.5th at pp. 1025–1026 [interpreting "murder in the first degree"]; *Lopez I*, *supra*, 88 Cal.App.5th at pp. 577–578 [ignoring the words "actual killer", interpreting "murder in the first degree"].)

Although statutory interpretation may go beyond a common sense plain language analysis and also include consideration of the statutory scheme, legislative intent, and legislative history (see *Jackson, supra*, 110 Cal.App.5th at pp. 166–181), such considerations would be unknown to the average juror and would not impact their understanding of the instruction. As such, we do not discuss them here. (See *People v. Kimbrel* (1981) 120 Cal.App.3d 869, 872 [jurors are expected to understand instructions as they are " 'commonly understood by those familiar with the English language' "].)

*Morris, supra,* 100 Cal.App.5th at p. 1026; *Lopez I, supra,* 88 Cal.App.5th at p. 578.)

We share the view of the Court of Appeal, Third District, in *Jackson* that "[i]f there is a commonsense (as opposed to a technical legal) meaning of 'murder in the first degree,' it necessarily entails the killing of a human being.  It follows that the *commonsense* meaning of the phrase 'aided, abetted, counseled, commanded, induced, solicited, requested, or assisted . . . in the *commission of murder* in the first degree' is aiding, abetting, . . . or assisting a *killing* that legally constitutes first degree murder.  When the words 'actual killer' are included in the phrase, so that it reads, 'aided, abetted . . . or assisted the *actual killer* in the *commission of murder* in the first degree,' the ordinary meaning of the statutory language is inescapable: assisting the killer in killing.  The phrase does not plainly express, at least in commonsense terms, the idea of aiding, abetting, or assisting someone in commission of a robbery, burglary or other felony by an act that does not also directly assist in a killing." (*Jackson, supra,* 110 Cal.App.5th at p. 167.)

We conclude that the nearly identical words of CALJIC No. 8.80 carried the same commonsense meaning, and that, whatever section 189, subdivision (e)(2) is ultimately interpreted by courts to require in terms of proof, the jurors would have understood CALJIC No. 8.80 to require that Brown had to aid the actual killer in the killing.  (*People v. Mena* (2005) 133 Cal.App.4th 702, 706 [jurors are presumed to understand the common meaning of language and to apply it with common sense].)  In finding the special circumstances true here, the jury necessarily found that, if he was not the killer, Brown aided the actual killer in the killings, and not merely the underlying

21

burglary and robbery.

### iii.  Knowledge

Finally, Brown argues that under *Curiel*, *supra*, 15 Cal.5th 433, he could not be convicted of murder under section 189, subdivision (e)(3) because the jury did not find that he had knowledge of Pinholster's unlawful intent or that he intended to assist Pinholster in achieving his unlawful ends. *Curiel* has no application here. In *Curiel*, our Supreme Court held that where a defendant is convicted of murder under the natural and probable consequences doctrine, the defendant cannot be found prima facie ineligible for relief solely on the basis that the jury found the defendant intended to kill. Rather, the record must "conclusively establishe[] every element of the offense." (*Id.* at p. 463.)

Brown's argument presumes that felony murder under section 189, subdivision (e)(2) requires knowledge of the perpetrator's mental state and a desire to achieve the perpetrator's unlawful ends as direct aiding and abetting does. It does not. (*Kelly*, *supra*, 105 Cal.App.5th at p. 176; *Curiel*, *supra*, 15 Cal.5th at p. 464.) The *Curiel* court itself stated this plainly: "[If] the jury . . . made findings on all of the other elements supporting felony murder under section 189 as amended, including (1) the commission or attempted commission of a felony enumerated in that statute and (2) the death of a person during the commission or attempted commission of the enumerated felony[,] . . . [and] additionally found intent to kill, . . . [c]onsidered together, the jury's findings would completely refute a petitioner's allegation that he or she could not currently be convicted of murder because of changes to sections 188 and 189."

22

(*Curiel*, *supra*, 15 Cal.5th at p. 464.)

As we have discussed, by finding the special circumstances true, the jury necessarily found all of the elements of felony murder under section 189, subdivision (e)(1) and (e)(2). This is true whether "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" requires the defendant to have assisted in the killing or the underlying felony. Because the record "conclusively establishes every element of the offense," Brown is ineligible for relief as a matter of law. (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

2. <u>A Defendant is Ineligible for Section 1172.6 Relief Where the Record Shows that the Jury Necessarily Found the Defendant Guilty Under a Currently Valid Theory of Murder, Regardless of Whether the Jury Was Also Instructed Under Theories of Murder that are no Longer Valid</u>

We also reject Brown's contention that, because he was tried with a codefendant and the trial court instructed the jury on theories of liability that are no longer valid (felony murder under the prior law and murder under the natural and probable consequences doctrine), he made a prima facie case for relief under section 1172.6. Although in many instances the giving of instructions on theories of murder that are no longer valid would be sufficient to establish prima facie eligibility for section 1172.6 relief, that is not the case where the overall record demonstrates that the jury made findings that necessarily render the defendant ineligible for resentencing as a matter of law. (*People v. Mares*

23

(2024) 99 Cal.App.5th 1158, 1173.)

Brown insists that, even if the special circumstance instructions and the verdicts otherwise foreclose eligibility, the jury could have convicted him under an invalid theory of murder simply because the jury was also given instructions that allowed malice to be imputed to him. Brown points to no authority to support the proposition that where the court's instructions *could have* permitted conviction under a now-invalid theory of murder those instructions defeat evidence in the record that conclusively demonstrates the jury *actually* convicted the defendant under a theory of murder that currently remains valid. In the cases Brown cites, the Supreme Court and the Courts of Appeal found that the defendant could have been convicted on an invalid theory because the jury was instructed on theories of murder that are no longer valid *and* there was nothing in the record that foreclosed eligibility as a matter of law. (*Curiel, supra*, 15 Cal.5th at pp. 441, 446–447 [jury's finding of intent to kill did not conclusively establish ineligibility where jury did not also find defendant had knowledge of perpetrator's intent or find defendant committed an act that assisted the crime]; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1188 [prosecutor's closing argument at trial did not establish as a matter of law that defendant was convicted of provocative act murder under a valid theory]; *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1269 [in light of ambiguous jury instructions and prosecutor's closing argument, record did not conclusively establish ineligibility].)

Here, as we have already discussed, the jury could not have found the special circumstances true unless it also found all of the elements of murder that are required to support a still valid theory of liability. Specifically, in light of the instructions given,

24

the jury necessarily found that Brown was guilty of felony murder, either as an actual killer or because, with the intent to kill, he "intentionally aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the murder in the first degree." Brown is prima facie ineligible for relief as a matter of law. The existence of instructions on invalid theories of liability does not undermine that conclusion.

## DISPOSITION

We affirm the trial court's order denying Brown's petition for resentencing under Penal Code section 1172.6.

NOT TO BE PUBLISHED.

MOOR, ACTING P. J.

WE CONCUR:

KIM, (D.), J.

KUMAR, J.*

---

*Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.